**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GILBERTO MENDEZ, on behalf of himself and
all others similarly situated,

                        Plaintiff,                    **MEMORANDUM OF**
                                                      **DECISION AND ORDER**
              -against-                               11-cv-1516 (ADS)(GRB)


BANK OF AMERICA HOME LOANS
SERVICING, LP, a subsidiary of  BANK OF
AMERICA, N.A.,

                        Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Giskan Solotaroff Anderson & Stewart LLP**
*Attorneys for the Plaintiff*
11 Broadway
Suite 2150
New York, NY 10004
              By:      **Oren Giskan, Esq.**
                       **Catherine Elizabeth Anderson, Esq., of Counsel**

**Goodwin Procter LLP**
*Attorneys for the Defendant*
The New York Times Building
620 Eighth Avenue
New York, NY 10018
              By:      Brian Douglas Hail, Esq., of Counsel


**SPATT, District Judge.**

        The Plaintiff in this case, Gilberto Mendez, brings this action against the

Defendant Bank of America Home Loans Servicing, LP, a subsidiary of Bank of

America, N.A. (the "Defendant" or "BAC"), on behalf of himself and all others

similarly situated, alleging common law claims for breach of contract, breach of the

implied covenant of good faith and fair dealing, and promissory estoppel, as well

violations of the New York General Business Law § 349. The Defendant has filed

a motion to dismiss the Plaintiff's claims pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 12(b)(6), for failure to state a claim upon which relief

can be granted. For the reasons set forth below, the Court grants the Defendant's

motion in part and denies it in part.

## I. BACKGROUND

The following facts are drawn from the Plaintiff's complaint and the

documents that were incorporated by reference in the complaint. See Doherty v.

Am. Home Prods. Corp., 216 F.3d 1071, No. 99 Civ. 9533 (Table), at *2 (2d Cir.

2000) ("We also consider the Option Plans and April 11 letter because they are

referenced in the complaint and form the sole basis for the complaint."); Steger v.

Delta Airlines, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) ("Because the Plan is

directly referenced in the complaint and is the basis of this action, the Court may

consider the Plan in deciding the motion to dismiss.").

### A.  The Alleged Mortgage Modification Agreement

The Plaintiff, Gilberto Mendez, is a homeowner with a mortgage on his

primary residence. For several years prior to April 2009, this mortgage was

serviced by Countrywide Home Loans Servicing LP ("Countrywide"). As of

March 23, 2009, Mendez had fallen three months behind on his monthly mortgage

payments, which totaled $2,794.50 per month. Therefore, the Plaintiff requested a

loan modification from Countrywide. On March 26, 2009, Mendez received an

offer from Countrywide entitled a "Step Rate" home loan modification offer, which

was part of Countrywide's Homeownership Retention Program.  This offer

provided a ten year interest only payment period and would reduce the Plaintiff's

monthly mortgage payments to approximately $984.94, plus taxes and insurance.  It

would also resolve any past due amounts.  After the ten year payment period

expired, Mendez would be required to make monthly payments of combined

principal and interest according to a specific interest rate schedule as set forth in the

offer.

Of particular importance, the offer letter sent by Countrywide to the Plaintiff

stated that:

> To Accept the Enclosed Modification, Here's What You Need To
> Do
>
> 1.  Carefully review all documentation enclosed. . . .
>
> 2.  Sign and date the enclosed document in the presence of a
>     notary. . . .
>
> 3.  Include any and all of the following income information
>     applicable to your situation with your signed and notarized
>     loan-modification agreement:
>
>     a.  Copies of two recent . . . paystubs for each income earner,
>         and/or
>
>     b.  Copies of your past three banks statements if . . . you are
>         self-employed, or if you have any other sources of Income
>         . . .
>
> 4.  Return the signed documents to us in the pre-paid FedEx
>     envelope no later than April 26, 2009 in order for it to take
>     effect.

(Def. Ex. 1) (emphasis added).  In addition, under a section of the offer titled

"Important Terms", the offer stated to "Remember to include copies of your

paychecks and/or bank statements along with your loan modification documents in the Federal Express envelope by the date indicated above." It also specified "that this offer is contingent upon verification of your income. Even if you sign and return the loan modification documents; <u>this modification will not take effect if we are not able to verify your income</u>."

The Complaint alleges that "Mendez signed and accepted the offer, had his signature notarized, and returned the executed agreement to Countrywide in April 2009." (Compl. at ¶ 11.) It goes on to state that at some time after returning the executed loan modification agreement to Countrywide, at an unspecified date, Mendez called to inquire about his loan modification and was told that Countrywide was now operating as BAC. The Defendant told Mendez that certain documents necessary to support his loan modification, such as his income statement, were missing and/or had not been received by BAC. Mendez alleges that he promptly provided the requested documents to the Defendant.

In June 2009, and for at least the next three months, the Plaintiff began making mortgage payments to the Defendant in the amount set forth in the loan modification agreement with Countrywide. However, BAC refused to accept these mortgage payments and returned them to Mendez because according to the Defendant, they were partial payments that did not satisfy the original amount due under his mortgage agreement. The Defendant then continued to bill Mendez at approximately $2,794.50 per month, plus late charges of approximately $41.68 per month for the months that he had not paid the $2,794.50 amount in full.

By August 2009, Mendez had again fallen seven months behind on his mortgage payments. When he spoke to the Defendant at that time regarding his monthly payments and the Countrywide loan modification agreement, they directed him to apply for a new loan modification agreement with BAC. He did as instructed and provided all of the necessary documentation in support of his new loan modification application.

Over the next year and a half, Mendez went through the process of applying for a loan modification with the Defendant multiple times. Each time, according to the Plaintiff, BAC would tell him that it needed additional paper work and/or that certain paperwork was missing and needed to be submitted. Often, this paperwork was duplicative documentation that the Defendant already had in its possession. In addition, the Plaintiff alleges that the Defendant in its communications often promised to resolve the Plaintiff's loan modification applications but did not do so in a timely manner.

For instance, on or about January 25, 2010, BAC sent Mendez correspondence that confirmed it had received financial documents in support of his loan modification. A letter sent to Mendez stated "Your request for assistance, along with your personal financial information, has been received. . . . be aware that receipt of your documentation starts the review process, which may take up to 45 days to complete." (Compl. at ¶ 16.) However, according to the Plaintiff, BAC did not complete the review process within 45 days as promised. Moreover, nearly identical letters were sent to the Plaintiff on March 15, 2010 and April 13, 2010, although both times BAC once again did not complete the review process within 45

days as promised. The Plaintiff claims that the futileness of the process was especially highlighted and caused in part by the incompetence and inconsistency of BAC's employed representatives.

In sum, although Mendez claims he "has timely provided BAC with all requested documentation, including utility bills, bank statements, income statements and tax filings, and has submitted the requested documentation multiple times to BAC, BAC has refused to honor the terms of his ten year loan modification with Countrywide or provide Mr. Mendez with a new loan modification." (Compl. at ¶ 24.) As a result, Mendez's monthly mortgage payments are now greater than his original monthly mortgage payments with Countrywide because of late fees, interest and other default related servicing fees.

## B. The Default Related Servicing Fees

In addition to claims relating to his loan modification agreement, the Plaintiff alleges that BAC charged him excessive and unlawful default related servicing fees, including monthly inspection fees ranging in amounts from $15 to $195.

Default related services are those that protect a lender's interest in the property, such as property inspections in order to verify whether a home is occupied. The standard mortgage contract between a borrower and a servicer allows the servicer to pay for such default related services when necessary and appropriate, and to have these fees reimbursed by the borrower. However, under the terms of the standard mortgage contract, those fees must be reasonable or

appropriate to protect the note holder's interest in the property and rights under the security instrument.

However, mortgage servicers have been accused of not consistently charging borrowers "reasonable or appropriate" default related services fees. For example, Countrywide, when still in existence, did not obtain default related services directly from third-party vendors and then pass that exact cost onto borrowers. Rather, according to the Plaintiff, it formed subsidiaries to obtain the services from third-party vendors and then the subsidiaries charged Countrywide a significantly higher fee, which was then passed on to homeowners. (Compl. at ¶ 29.)

As a result of this behavior, on June 7, 2010, the Federal Trade Commission ("FTC") brought a civil enforcement action in the United States District Court for the Central District of California against Countrywide Home Loans, Inc., and BAC, formerly doing business as Countrywide Home Loans Servicing, LP, for charging borrowers excessive and unlawful fees for "default related services." See FTC v. Countrywide Home Loans, Inc., and BAC Home Loans Servicing, LP, No. 10 Civ. 4193 (C.D. Cal. 2010) (the "FTC Complaint"). In particular, the FTC alleged that the Defendants violated its mortgage contracts with borrowers by (1) charging substantially marked up default related servicing fees in excess of the actual cost of the services; and (2) charging for services that were not reasonable and appropriate to protect the note holder's interest in the property and rights under the security instrument. The FTC Complaint alleged that this was especially problematic because the homeowners in default lacked meaningful bargaining power: they had

no choice as to what default related services were performed, the cost therefore, or who performed the services.

One week after the filing of the FTC Complaint, a stipulated Consent Judgment and Order was entered on June 15, 2010, which provided that the Defendants would immediately cease and desist charging homeowners marked-up and unnecessary default related fees. As part of this judgment, BAC was required to make clear and prominent disclosures on its website as to the prices charged to homeowners for default services. (See Consent Judgment and Order, Pl. Ex. C, at 9-10) ("This Fee Schedule shall include a description of the Fees that may be charged, the amount or, where applicable, the range of each Fee, and if the Fee will or may be paid to an Affiliate, a disclosure of that fact and the names of the affiliated services providers. . . .")

The Plaintiff now alleges that BAC has again violated the mortgage contracts and the 2010 Consent Judgment and Order by charging borrowers such as the Plaintiff for "marked-up" default services "at prices well in excess of the actual cost of the services performed and also by charging for services, including monthly property inspections, that are not reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument." (Compl. at ¶ 33.) For example, BAC's website provides a price list for "Default Related Service Fees" and it states that it will charge between $14 and $26.25 for the inspection of property. However, BAC charged the Plaintiff inspection fees as high as $195 in February 2011. (Compl. at ¶ 45.)

## C. Procedural History

On March 28, 2011, the Plaintiff Mendez, on behalf of himself and all others similarly situated, filed this Complaint against the Defendant BAC alleging breach of the loan modification contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; breach of the original mortgage contract; and violation of the New York General Business Law ("GBL") § 349.

On June 14, 2011, the Defendant filed a Motion to Dismiss each of the five counts on various grounds.

## II. DISCUSSION

## A. Legal Standard on a Motion to Dismiss

Under the now well-established Twombly standard, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only

a complaint that states a plausible claim for relief survives a motion to dismiss' and

'[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus,

"[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and . . . determine whether they plausibly give rise to an entitlement of

relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual

allegations set forth in the complaint and draws all reasonable inferences in the

Plaintiff's favor.  Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108

L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir.

2007).  Only if this Court is satisfied that "the complaint cannot state any set of

facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.

R. Civ. P. 12(b)(6).  Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir.

1993).

**B.  As to the Cause of Action for Breach of the Loan Modification Contract**

The basis for the Defendant's motion to dismiss this cause of action is that

there can be no cause of action for breach of the loan modification contract because

the Plaintiff has not adequately pled the formation and existence of a contract in the

first instance.  In particular, the Defendant asserts that no contract was formed

because the offer from Countrywide explicitly contained a number of conditions

precedent to formation, which the Plaintiff does not plead that he has satisfied.   For

example, the offer states that to accept the modification offer, Mendez was to send

the company his income information, such as paystubs, in addition to the signed and notarized loan modification agreement. The offer then directs the offeree to "[r]eturn the signed documents to us in the pre-paid FedEx envelope no later than April 26, 2009 in order for it to take effect." The Defendant argues that although the Plaintiff alleges in the Complaint that he signed and accepted the offer, had his signature notarized, and returned the executed agreement to Countrywide in April 2009, he does not specifically allege that he included the requisite income information. Regardless, the Defendant claims that a contract was never formed because the offer stated that "Even if you sign and return the loan modification documents, this modification will not take effect if we are not able to verify your income."

The Plaintiff concedes that certain conditions precedent to contract formation existed. However, Mendez claims that he has alleged that he "fully performed his part pursuant to the Countrywide Loan Modification agreement by timely providing Defendant BAC with all requested documents concerning his income . . ." (Pl. Opp. at 7.) The Plaintiff points to several allegations in the Complaint, specifically highlighting a letter dated October 27, 2010 from Mendez to BAC prior to commencing this action, where he stated that he "submitted the ap[p]lication for the mortgage modification and [he] was accepted and granted the modification for 10 years . . ." (Compl. at ¶ 22.)

"In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of the defendant to perform; and (iv) damages." <u>Johnson v. Nextel</u>

Comm'ns. Inc., 660 F.3d 131, 142 (2d Cir. 2011) (citing Eternity Global Master

Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004);

Murphy v. Implicito, 392 N.J. Super. 245, 265, 920 A.2d 678 (App. Div. 2007)).

Although the substantive merits of any contract claims are governed by New York

law, any pleading requirements are governed by federal law, which controls

procedural matters in diversity cases.  See 2 Moore's Federal Practice § 9.03[1][e]

(3d ed. 2003).

The Federal Rules of Civil Procedure do not require a plaintiff to detail in

the complaint all of the facts upon which a claim is based.  To the contrary, the

Rules require only "a short and plain statement of the claim that will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."  Iqbal, 129 S. Ct. at 1949; see Fed. R. Civ. P. 8(a)(2) (requiring "a short and

plain statement of the claim showing that the pleader is entitled to relief").

With regard to contract claims in particular, Rule 9(c) of the Federal Rules

of Civil Procedure provides that "In pleading the performance or occurrence of

conditions precedent, it is sufficient to aver generally that all conditions precedent

have been performed or have occurred.  A denial of performance or occurrence

shall be made specifically and with particularity."  Fed. R. Civ. P. 9(c).

> A general allegation of the performance or occurrence of a
> condition precedent is typically quite brief and to the point.  Thus,
> for a contract claim, it is sufficient that the pleader "tracks the
> language" of Rule 9(c) by alleging "all conditions precedent have
> occurred or been performed," or simply alleges that the claimant
> "has performed all of its obligations as an insured under the
> [p]olicy," or "has at all times performed all its proper and
> legitimate duties and obligations under its contract."

Moore's Federal Practice § 9.04 (2011).

The language of Rules 8(a)(2) and 9(c) does not expressly require that the performance or occurrence of conditions precedent be pleaded by a claimant. Instead, Rule 9(c) merely describes how performance or occurrence of conditions precedent is to be pleaded.  See Kiernan v. Zurich Cos., 150 F.3d 1120, 1123-1124 (9th Cir. 1998) ("Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made.").  Nevertheless, courts in other circuits have expressly imposed such a requirement.  See, e.g., YWCA v. All State Ins. Co. of Canada, 158 F.R.D. 6, 8 (D. D.C. 1994) ("Since an insurer's duty under the policy of insurance does not arise until the conditions precedent have occurred or been performed, it is incumbent on a plaintiff seeking recovery under the insurance policy to allege that all the conditions precedent to recovery have been fulfilled.").

There is little case law in this Circuit regarding this particular provision of the Federal Rules.  See Ackerley Media Group, Inc. v. Sharp Elecs. Corp., 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001) ("Perhaps because [the] language [of Rule 9(c)] is so straightforward, there is relatively little case law interpreting this rule.  The court knows of no Second Circuit case passing on the matter.").  Moreover, courts in this Circuit have been inconsistent with regard to whether a claimant must plead performance or occurrence of conditions precedent.  Compare Baraliu v. Vinya Capital, L.P., No. 07 Civ. 4626, 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009) ("Under the Federal Rules, a plaintiff is required to "allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. P. 9(c).

Plaintiff fails to do so, and in fact admits in another part of his complaint that the conditions precedent were not satisfied, and hence this claim must be dismissed."); Udell v. Berkshire Life Ins. Co. of Am., No. 03 Civ. 2721, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005); and CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd., No. 03 Civ. 7936, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006) (finding failure to state a claim because plaintiff failed to allege, even generally, that the conditions precedent were performed or had occurred) with Randolph Equities, LLC v. Carbon Capital, Inc., No. 05 Civ. 10889, 2007 WL 914234, at *4 (S.D.N.Y. Mar. 26 2007) ("Defendants' contention that Rule 9(c) mandates Plaintiffs to plead with specificity the performance of each condition precedent is misguided."); Ackerley Media Group, Inc., 170 F. Supp. 2d at 453 ("Apparently Sharp believes that an "absence of itemized averments of [Ackerley's] performance" is somehow fatal to Ackerley's claim. . . . The plain language of Fed. R. Civ. P. 9(c) would seem to indicate otherwise."); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243 (S.D.N.Y. 1997) (Rule 9(c) "does not in terms require the plaintiff to allege the performance or occurrence of conditions precedent; it simply permits a plaintiff to do so generally and requires specificity in the denial of any such allegation."). See Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC, 2007 WL 2044656, at *5 (S.D.N.Y. July 17, 2007) (recognizing the inconsistency amongst courts in this Circuit).

Regardless, it is clear that even where courts require allegations in the complaint with regard to the satisfaction of conditions precedent, courts have consistently accepted only general averments of their fulfillment. See, e.g., Nova

Intern., Inc. v. Am. Exp. Bank, Ltd., No. 94 Civ. 8536, 1996 WL 39317, at *6 (S.D.N.Y. 1996) ("Amex's argument that this cause of action must be dismissed for Nova's failure to adequately allege performance of conditions precedent is also rejected. . . . Nova's general statement that it satisfied all conditions precedent is sufficient to overcome Amex's motion to dismiss."); See also Patel v. Baluchi's Indian Rest., No. 08 Civ. 9985, 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (noting that general allegations are sufficient under Rule 9(c), even post-Twombly).

The Court now finds that the plain language of Rule 9(c) controls, and that the Plaintiff here is not required to plead that he has fulfilled the conditions precedent set forth in the loan modification agreement. Therefore, the allegations contained in the Complaint that the Plaintiff points to in its opposition are more than sufficient to meet Rule 9(c)'s liberal pleading standards. See Kiernan v. Zurich Cos., 150 F.3d 1120, 1124 (9th Cir. 1998) ("Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made."); Kapahu v. BAC Home Loans Servicing LP, No. 10 Civ. 97, 2010 WL 2734774, at *4 (D. Hawaii, July 8, 2010) ("Contrary to BAC's argument, Rule 9(c) does not create an affirmative requirement that a claimant plead that all conditions precedent have been met"); City v. Cty. Of San Francisco v. Tutor-Saliba Corp., No. 02 Civ. 5286, 2005 WL 645389, at *19 (N.D. Cal. Mar. 17, 2005). See also Warner Licensing Co., Inc. v. Kitty Fan Koo, 281 A. D.2d 190, 721 N.Y.S.2d 235 (1st Dep't 2001) ("Although defendant strenuously argues that plaintiff has pleaded its performance of the agreement in merely conclusory terms, defendant has overlooked CPLR 3015(a), which provides that

performance of conditions precedent in a contract [under NY law] need not be pleaded; the burden to plead non-performance "specifically and with particularity" is on the party asserting that contention.").   This Court's conclusion seems especially appropriate in light of the fact that the Defendant's position requires a factual analysis which is not possible on a motion to dismiss.

However, even if the Court were to require a general averment to the satisfaction of any conditions precedent, the Court finds that the Plaintiff has sufficiently done so.  Here, the Plaintiff alleges that he submitted his application, and that Countrywide accepted this application and "granted the modification for 10 years."  (Compl. at ¶ 22.)  The Plaintiff's allegation that he submitted the application could reasonably mean that he submitted not only the signed and notarized agreement but also the other requisite documents to fully complete his application.  Although the Defendant argues that BAC told him that certain documents necessary to support his loan modification, including his income statement, were missing and/or had not been received by BAC, this does not automatically imply that they were never sent.  Rather, it may be that the Defendant lost the relevant paperwork.  If, in fact, the Defendant's incompetence as alleged in the Complaint made it unable to subsequently safeguard and maintain such documents, then that would not preclude recovery under New York contract law.  See Cross & Cross Properties, Ltd. V. Everett Allied Co., 886 F.2d 497, 501 (2d Cir. 1989) ("It is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself.") (internal citation omitted).  Under this same reasoning, the Court also finds that the

Plaintiff has not implicitly admitted in the Complaint that the conditions precedent were not satisfied. Cf. Baraliu, 2009 WL 959578, at *5 (S.D.N.Y. Marc. 31, 2009) ("Plaintiff . . . in fact admits in another part of his complaint that the conditions precedent were not satisfied, and hence this claim must be dismissed.").

In addition, there is no particular date stated in the Complaint with regard to when the Defendant informed Mendez that his loan documentation was missing and/or had not been received. Thus, there is every possibility that Mendez "provided the requested documents promptly" and therefore by the deadline of April 26, 2009, as stated in the offer. See Banks v. Corr. Servs. Corp., 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) ("If the interpretation of a contract is at issue, a court is 'not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement,' although all contractual ambiguities must be resolved in the plaintiffs favor." (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995))).

Moreover, the fact that the Plaintiff alleges that Countrywide granted the modification is comparable to alleging that the agreement was in effect, and thus is sufficient in general terms to find that any conditions precedent were necessarily satisfied. See Kiernan, 150 F.3d at 1124 (alleging that insurance policy was "in full force and effect" at time of accident was adequate averment, under loose guidelines of Fed. R. Civ. P. 9(c), that all conditions precedent to policy had been satisfied). Also, Mendez alleges in the Complaint that he "has timely provided BAC with all requested documentation, including utility bills, bank statements, income statements and tax filings . . ." (Compl. at ¶ 24.) Although the Complaint does not state that

these particular documents were sent by April 26, 2009, this statement sufficiently alleges in general terms that "all requested documentation" was provided. See Randolph Equities, LLC, 2007 WL 914234, at *5 (the argument that a contract claim should be dismissed because the complaint did not allege that the defendant received satisfactory loan documentation by a particular date was unavailing, because the plaintiffs stated that they did provide the defendant with all necessary information and documentation to close on the property).

Finally, the Defendant heavily relies on the "condition precedent" that states "this modification will not take effect if we are not able to verify your income" as an escape hatch to claim that no contract was properly formed. However, assuming the Plaintiff provided his income information, which the Court believes he has adequately alleged, this provision does not impose an additional condition precedent on the Plaintiff. Rather, it is an alternative way of expressing in the offer that if the requisite loan documents were not received pursuant to the stated condition precedent, then the modification agreement would not take effect. Furthermore, to the extent that the modification agreement made BAC's obligation to proceed with the modification contingent upon its satisfaction, in its sole discretion, with the income information provided, this would not render the agreement invalid. See, e.g., Matter of Associated Teachers of Huntington, Inc. v. Board of Educ., Union Free School Dist. No. 3, Town of Huntington, 33 N.Y.2d 229, 233–234, 306 N.E.2d 791, 351 N.Y.S.2d 670 (1973) (finding that the fact that one party to a contract would be "the final judge" of whether another party "met the conditions necessary to receive the benefits of the agreement [did] not negate the

existence of an enforceable contract right," inasmuch as "[b]oth common law and statutory law recognize the existence of contractual obligations where either the satisfactory performance of one party or the existence of conditions precedent is left solely to the good faith judgment of the other party").  Accordingly, this statement in the modification offer does not alter the Court's conclusion that the Plaintiff has sufficiently alleged that all conditions precedent were fulfilled.

Of course, now that the Defendant has asserted non-compliance with the conditions precedent, it will be the Plaintiff's burden to demonstrate that such conditions were met.  Wei Hong Zheng v. Wong, No. 07 Civ. 4768, 2009 WL 2601313, at *3 (E.D.N.Y. Aug. 24, 2009) ("Once the defendant has challenged the condition precedent specifically and with particularity, the burden is on the plaintiff to prove that the condition precedent was satisfied.")  However, at the motion to dismiss stage, "[t]he issue is not whether a plaintiff will or might ultimately prevail on [his or] her claim but whether [he or] she is entitled to offer evidence in support of the allegations in the complaint."  Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 62 (2d Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. at 232, 236, 94 S.Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.")).  The Court finds that the Plaintiff has made sufficient allegations in this regard to entitle him to offer evidence in support of this claim.

Therefore, the Court finds that the Plaintiff's allegations in the Complaint are sufficient; the Plaintiff's breach of contract claim stands; and the Defendant's motion to dismiss this cause of action is denied.

C.  **As to the Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Defendant also asserts that the Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing fails as a matter of law because: (1) it is based on the same alleged modification agreement that never took effect; and (2) it is duplicative of the Plaintiff's breach of contract claims.  The Plaintiff, in his opposition, contends that the Defendant BAC breached the implied covenant "by repeatedly losing, misplacing, or otherwise failing to consider Mr. Mendez's income related documents in support of his loan modification in order to verify his income in a timely manner" (Pl. Opp. at 10), and that this is distinguishable from his express breach of contract claim.

As to the Defendant's first contention, the Court has found that there are sufficient allegations that an enforceable underlying contract was in place.  Cf. Garrett v. Music Publ'g Co. of America, LLC, 740 F. Supp. 2d 457, 463 (S.D.N.Y. 2010) ("There can be no breach of contract, or the implied covenant of good faith and fair dealing, without a governing valid contract.").  Therefore, the Defendant's first argument for dismissal is without merit.

As for duplicity, the Defendant specifically claims that under New York law, a claim for a purported breach of the implied covenant of good faith and fair dealing may not stand if it is entirely duplicative of accompanying claims that the express terms of a contract were breached.  The Defendant asserts that the Plaintiff's allegation that BAC has breached its duty of good faith by failing to have the resources and competence to ensure timely processing of loan modification

requests should be dismissed because it amounts to nothing more than a restatement of his express breach of contract claim discussed above.

However, the Plaintiff attempts to distinguish its express breach of contact claim and its breach of the implied covenant of good faith and fair dealing claim by asserting that BAC, as a successor of Countrywide's mortgage servicing duties, had a separate duty to safeguard, maintain, and timely consider the documents provided by Mendez and to hire and to train competent staff to keep track of the documents and verify his income.  Accordingly, the Plaintiff claims that BAC breached the implied covenant of good faith and fair dealing when it repeatedly lost, misplaced, or otherwise failed to consider Mendez's income related documents in support of his loan modification in order to verify his income in a timely manner—not that it did not honor the actual terms of the contract.  The Plaintiff points to examples of a breach of the implied covenant of good faith and fair dealing as set forth in the Restatement of Contracts, which includes "lack of diligence and slacking off" as well as "willful rendering of imperfect performance."  (Pl. Opp. at 10 (citing Restatement (Second) of Contracts, note 7, at § 205 Comment (d) (1981)).)

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a

substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198–99 (2d Cir. 2005) (citation omitted)

However, New York law will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it arises from the same allegations as a breach of contract claim. See Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423, 894 N.Y.S.2d 47, 49–50 (1st Dep't 2010) (upholding dismissal of claim for breach of the implied covenant as "duplicative of the breach-of-contract claim" because "both claims arise from the same facts and seek the identical damages for each alleged breach") (internal citations omitted). See also Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of a covenant of an express provision of the underlying contract.") (quoting Harris v. Provident Life & Accident Ins., Co., 310 F.3d 73,80 (2d Cir. 2002)); Goldblatt v. Englander Communications, LLC, No. 05 Civ. 8510, 2007 WL 148699, at *5 (S.D.N.Y. Feb. 8, 2007) ("a claim for breach of the implied covenant of good faith can survive a motion to dismiss 'only if it is based on allegations different from those underlying the accompanying breach of contract claim.'"). "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative." Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05 Civ. 8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (quotation omitted).

The Plaintiff's cause of action is essentially that BAC breached the implied covenant of good faith and fair dealing contained in the Countrywide loan modification agreements by failing to competently and timely process his loan modification request. (Compl. at ¶ 65.) The allegations in support of this cause of action can be interpreted in one of two ways.

On the one hand, if the Plaintiff's argument is construed as stating that the Defendant breached the implied covenant because it did not make a good faith effort to safeguard, maintain, and process his income documentation and loan modification request in the first instance, then this contention sounds more in contract formation rather than an infringement of the Plaintiff's rights to the benefits of the contract. To argue that the Defendant never processed his income documentation or verified his income may necessarily mean that no contract was ever formed. "Absent the existence of a contract, a claim alleging breach of the implied covenant of good faith and fair dealing is legally unavailing." Keefe v. N.Y. Law School, 71 A.D.3d 569, 570, 897 N.Y.S.2d 94 (1st Dep't 2010); see also Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1996) (holding that the determination that no contract existed disposed of cause of action for breach of the duty of good faith and fair dealing).

Thus, the Plaintiff necessarily has to allege that the Defendant did process and verify his income information but then failed to recognize the agreement using the lack of loan documentation as a reason—i.e., that the Defendant fulfilled its contractual obligations—but that its failure to safeguard and maintain the documentation was done in bad faith in order to deprive the Plaintiff of the benefit

of his bargain. If the Plaintiff's cause of action is not construed in this manner, then he has undoubtedly merged his breach of contract and good faith and fair dealing claims by alleging that the Defendant failed to verify his income and process his loan documentation in the first instance. See Serdarevic v. Centrex, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010).

Regardless, if the Plaintiff's arguments are interpreted as a lack of good faith in initially recognizing the contract's existence, the claim is without merit because New York law does not recognize a duty of good faith in the formation of a contract. See Frutico S.A. de C.V. v. Bankers Trust Co., 833 F. Supp. 288, 300 (S.D.N.Y. 1993) ("[W]hen no agreement exists, either in principle or in fact, there is no duty to negotiate in good faith that can be enforced against a party to the negotiations"). A good faith duty only exists in a party's performance or enforcement of a contract. See Dalton v. Educ. Testing Service, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289 (1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."). Thus, if the Court reads the Plaintiff's cause of action as alleging a breach with regard to contract formation, this claim must be dismissed.

On the other hand, the Plaintiff's allegations may be construed as claiming that the requisite income information was provided and the modification was granted, but that the Defendant's incompetence rendered it unable to recognize the agreement's validity. Nevertheless, such a claim is without merit because it is duplicative of the Plaintiff's breach of contract claim as it stems from the same allegations and set of facts. The Defendant's refusal to recognize Countrywide's

supposed agreement with the Plaintiff by demanding duplicate documents, failing to allocate sufficient resources and to train competent and knowledgeable staff is, at its core, a failure of BAC to fulfill its contractual obligations.  Although the Plaintiff attempts to distinguish this cause of action from its breach of contract claim, the Court agrees with the Defendant that the Plaintiff's basic argument is that the Defendant breached the duty of good faith "by repudiating the contract's formation and validity (allegedly by continually refusing to acknowledge the sufficiency of the submitted income documentation)."  (Def. Reply at 5.)

Moreover, any damages resulting from a breach of the contract are necessarily the same as any damages resulting from a breach of the implied covenant of good faith and fair dealing—the assessing of late fees, interest, and other delinquency related fees from billing the Plaintiff in excess of the original monthly mortgage payment amount as opposed to a lower amount pursuant to the modification agreement.  See Deer Park Enters., LLC v. Ail Sys., Inc., 57 A.D.3d 711, 712, 870 N.Y.S.2d 89, 90 (2d Dep't 2008) ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of contract.") (internal quotation marks omitted).

Therefore, even if the Plaintiff's cause of action is construed as not properly processing his loan documentation once the modification was granted, it also fails because it is identical to the breach of contract claim.  See Serdarevic, 760. F. Supp. 2d at 334 n.4.

Accordingly, the Defendant's motion to dismiss the implied covenant of good faith and fair dealing claim is granted.

**D.** **As to the Cause of Action for Promissory Estoppel**

The Defendant has also moved to dismiss the Plaintiff's third cause of action for promissory estoppel because the Defendant argues that the Complaint does not allege reasonable reliance on any promise made by BAC or any injury sustained on the basis of such reliance.

The Complaint appears to allege that there was a clear and unambiguous promise by BAC to Mendez that he was approved for a loan modification and thereby represented to him that he could make modified, reduced payments pursuant to the loan modification agreement that would satisfy his existing loan obligations. It further appears to allege that the Plaintiff reasonably relied on that representation and began to make the modified lower monthly payments for several months pursuant to that agreement. Accordingly, the Plaintiff claims that he was injured by that reliance because he was subject to certain penalties for making insufficient payments.

It is undisputed that New York law governs the promissory estoppel claim. Under New York Law, the elements of a claim for promissory estoppel are (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an injury to the party to whom the promise was made by reason of the reliance. Braun v. CMGI, Inc., 64 Fed App'x 301, 304 (2d Cir. 2003); Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995). However, "a detailed showing of the elements of promissory

estoppel need not be shown to survive a pre-answer motion to dismiss." Prospect St. Ventures I, LLC v. Eclipsys Solutions Corp., 804 N.Y.S.2d 301, 303 (1st Dep't 2005) (citing Rogers v. Town of Islip, 646 N.Y.S.2d 158, 158 (2d Dep't 1996)).

As an initial matter, the Court is cognizant of the general rule that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N .Y.2d 382, 388, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987). "It is . . . impermissible to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Id. at 389; see, e.g., Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc., 723 F. Supp. 976, 993 (S.D.N.Y. 1989) (dismissing promissory estoppel claim in light of applicable written agreement); Apfel v. Prudential-Bache Sec., Inc ., 81 N.Y.2d 470, 479, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (1993) (rejecting unjust enrichment claim where a written agreement controlled the transaction).

However, in the present case, the Plaintiff is permitted to continue his claim for promissory estoppel because the existence of the contract itself is disputed, specifically with regard to whether the conditions precedents were satisfied by the Plaintiff. See Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P., No. 08 Civ. 10578, 2010 WL 1257326, at *9 (S.D.N.Y. Mar. 12, 2010) ("where Defendants dispute the existence of a valid, enforceable contract, Plaintiffs are permitted to proceed on both contractual and quasi-contractual theories." (citing

Missigman v. USI Ne., Inc., 131 F. Supp. 2d 495, 513-14 (S.D.N.Y. 2001)); Old Salem Dev. Group, Ltd. V. Town of Fishkill, 301 A.D.2d 639, 754 N.Y.S.2d 333 (2d Dep't 2003) ("Under these circumstances, and at this early juncture in the litigation, the plaintiffs are entitled to proceed on both quasi contract and breach of contract theories."). Therefore, the promissory estoppel claim is not barred at this stage merely because the Plaintiff is also bringing a breach of contract claim.

As for the Defendant's first basis for dismissal of this claim, the Court finds that there indeed was a "clear and unambiguous" promise pled in the Complaint. (See Compl. at ¶ 22) ("I submitted the ap[p]lication for the mortgage modification and I was accept[ed] and granted the modification for 10 years."). For the same reasons set forth above in the context of the breach of contract claim, the fact that conditions precedent existed do not preclude this claim because the Plaintiff has adequate pled that he has satisfied them. (See Compl. at ¶ 24) (Mendez alleging that he "has timely provided BAC with all requested documentation, including utility bills, bank statements, income statements and tax filings . . ." ). See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., No. 10 Md. 2193, 2011 WL 2637222, at *4 (D. Mass. July 6, 2011) ("Defendants move to dismiss this claim on the ground that no plaintiff could reasonably have relied on a promise in the [agreement] to modify his or her loan because the [agreement] contained numerous conditions precedent which plaintiffs failed to fulfill. As I noted above, this argument fails because plaintiffs allege that they have complied with conditions precedent. The motion to dismiss the promissory estoppel claim is therefore denied.").

As for the Defendant's second basis for dismissal of this claim, the Court also finds that the Plaintiff had adequately pled an "injury sustained" from his alleged reliance on the loan modification agreement.  The Defendant argues that although Mendez alleges that his "monthly mortgage payments [became] greater than his original monthly mortgage payments with BAC," in part because of "late fees, interest, and other default-related servicing fees" charged by BAC (Compl. at ¶ 24), his history of insufficient monthly payments prior to the loan modification indicates that he would have incurred these additional fees regardless of whether he relied on any modification plan being in place.  However, the Plaintiff is correct that at this stage of the litigation, this argument is speculative at best.  Cf. Hedspeth v. Citicorp Individ. Bank Ret. Plan, No. 91 Civ. 1471, 1993 WL 204808, at *19 (S.D.N.Y. 1993) (finding in an appeal based upon an entire administrative record that a claimed injury was "at best based upon speculative assumptions.").

While it is true that the Plaintiff was already subject to late fees, the Defendant cannot definitively argue at this stage of the litigation that certain fees were not assessed or increased a specific amount purely as a result of the Plaintiff's reliance on the loan modification and related payments he made in June, July, and August 2009.  The Defendant also cannot say conclusively that Mendez could not have sought or considered other financial alternatives if he did not rely on the loan modification agreement so that he would not have been assessed future penalty fees. Whether the Plaintiff can ultimately prevail in establishing its allegations is not part of this Court's calculus in determining a motion to dismiss.  The question is whether the Plaintiff is entitled to obtain discovery and offer evidence to support his

claim.  <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 476 (2d Cir. 2006); <u>See</u>

<u>Aurecchione</u>, 426 F.3d at 638-39 (noting that, at the Rule 12(b) stage of litigation,

"it is not necessary for the district court to determine which party shall ultimately

prevail").

Therefore, because the Plaintiff has adequately alleged reasonable reliance

on a promise made by the Defendant and an injury sustained on the basis of such

reliance, the Defendant's motion to dismiss the Plaintiff's promissory estoppel

claim is denied.

**E.**  <u>**As to the Cause of Action for Breach of the Original Mortgage Contract**</u>

Next, the Defendant has moved to dismiss the Plaintiff's fourth cause of

action for breach of the original mortgage contract.

The Plaintiff relies upon a sample mortgage contract between the Defendant

lender and a borrower such as Mendez, which states that a borrower is to pay

default related servicing fees, but only "for whatever is reasonable or appropriate to

protect the note holder's interest in the property and rights under the security

interest, including protecting and/or assessing the value of the property, and

securing and/or repairing the property."  (Compl. at ¶ 73.)  Mendez alleges that

BAC has violated this type of mortgage contract by charging Mendez and other

borrowers for "marked-up" default services at prices in excess of the actual costs,

and also that these services are not reasonable or appropriate to protect the note

holder's interest in the property and rights under the security instrument.

The Defendant contends that the Plaintiff's claim must be dismissed because

it is based upon contract language not from the Plaintiff's actual mortgage contract,

but rather from a "standard Fannie Mae/Freddie Mack [sic] form contract." The Defendant has put forth the Plaintiff's actual mortgage agreement entitled "Fannie Mae/Freddie Mac Uniform Instrument, Form 3033 1/01" to rebut the Plaintiff's allegation, which the Court may properly consider. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [courts] may consider its contents even if it is not formally incorporated by reference.") (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

The Plaintiff has alleged that since the entry of the Consent Judgment and Order, BAC has represented to the public that it charges between $14 and $26.25 for the inspection of a property but has charged Mendez as much as $195 as an inspection fee. This does raise a plausible inference that such a default related service fee is "marked-up" in excess of the actual costs of inspection services. However, the cause of action is for breach of contract, and the actual mortgage contract between Mendez and his lender demonstrates that BAC is not explicitly prohibited from charging anything other than its bottom line "actual costs". The mortgage agreement merely provides that:

> Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee.

(Def. Ex. 1 at 13.)   Thus, the Plaintiff's identical restatement of the allegations in the FTC complaint is misplaced in this particular case.  The Plaintiff cannot demonstrate that he had a mortgage contract which contained the form prohibitive language relied on both in the FTC case and in the present action.

Therefore, the Plaintiff has no plausible claim that the inspection fees charged by the Defendant were in violation of any express terms of his actual mortgage contract.  Mendez's contract, unlike the standard form contract relied upon by the Plaintiff in the Complaint, does not contain language which permits fees only for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument.   Accordingly, the Plaintiff's cause of action for breach of the mortgage original contract is dismissed.

**F.   As to the Cause of Action Under New York General Business Law 349**

Finally, the Defendant moves to dismiss the Plaintiff's fifth cause of action for violations of New York General Business Law ("GBL") § 349 ("Section 349"), on the ground that Mendez has not adequately alleged materially deceptive or misleading practices.

The New York Consumer Protection Act codified at § 349 of the GBL declares that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York are unlawful.  N.Y. Gen. Bus. § 349(a).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)

(citing <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a) . . . ." <u>Pelman ex rel. Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 511 (2d Cir. 2005). The purpose of Section 349 is to "'empower customers,' especially 'the disadvantaged'" and to "even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." <u>Watts v. Jackson Hewitt Tax Service Inc.</u>, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) (quoting <u>Vitolo v. Mentor H/S, Inc.</u>, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006)).

While this cause of action certainly hinges on the assessment of default related services fees, it is not entirely clear from the Complaint or the Plaintiff's opposition why this particular act or practice of the Defendant is deceptive and misleading in a material way. The Plaintiff characterizes its allegations for this cause of action generally, by claiming "that the much higher default service fees that Defendant BAC charged him and other consumers were deceptive and materially misleading." (Pl. Reply at 21.) Therefore, in order to potentially state a cause of action under GBL § 349, the Court reads the Plaintiff's claims as necessarily based on one of three alleged factual predicates: (1) the charged fees are deceptive and misleading because they are in excess of those posted on BAC's website; (2) the charges fees are deceptive and misleading because they are in violation of the Consent Order and Judgment entered by the United States District Court for the Central District of California; or (3) the charged fees are deceptive

and misleading because they are in violation of the Plaintiff's mortgage contract with the Defendant. The Plaintiff's allegation that simply charging fees BAC was not entitled to collect is a conclusory allegation insufficient to state a claim under Section 349. See Grand General Store, Inc. v. Royal Indemnity Co., No. 93 Civ. 3741, 1994 WL 163973, at *4, 1994 U.S. Dist. LEXIS 5251, at *11 (S.D.N.Y. April 22, 1994) (conclusory allegations have been held to be insufficient to state a claim under Section 349).

First, the Plaintiff expressly denies that this cause of action stems from an allegation that BAC's default related servicing fees are deceptive and misleading because the fees charged to the Plaintiff are in excess of those posted on BAC's website. However, as part of this cause of action in the Complaint, that is precisely what the Plaintiff alleges: namely, that "BAC has charged the Plaintiff and other similarly situated homeowners unreasonable, excessive and unlawful default service related fees . . . that are often well in excess of the amounts BAC represents on its website that it may charge for inspections. (Compl. at ¶ 81.)

The fees posted on the Defendant's website are intended to address the Consent Judgment and Order issued by the United States District Court for the Central District of California on June 15, 2010, which states that if a consumer's loan goes into default and prior to assessing any fees for default-related services, the notice of default must disclose a link to a schedule of fees for those services ("Fee Schedule") on BAC's website that "shall include a description of the Fees that may be charged, the amount or, where applicable, [and] the range of each Fee . . ." (Pl. Ex. B at 9-10.)

On one hand, the fact the Defendant disclosed its fees in advance of payment by the borrower is generally sufficient to show that the fees were not misleading. See, e.g., Zuckerman v. BMG Direct Mktg., Inc., 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't. 2002) (holding that shipping and handling fees were not deceptive where amounts were disclosed). However, "the general rule that consumer fraud claims cannot be predicated on fully disclosed facts does not apply when one party has exploited a disparity of bargaining power." Cohen v. J.P. Morgan Chase & Co., 608 F. Supp. 2d 330, 349–350 (E.D.N.Y. 2009); Negrin v Norwest Mortgage, Inc., 263 A.D.2d 39, 40, 700 N.Y.S.2d 184 (2d Dep't 1999). Regardless, the issue here is not that the Defendant disclosed the challenged fee but rather that it disclosed a Fee Schedule that was not actually followed.

In the present case, the Plaintiff has not alleged that he himself was advised, presumably through the fees listed on BAC's website, that only certain fees would be applied. Cf. Moses v. Citicorp Mortg., Inc., 982 F. Supp. 897, 903 (E.D.N.Y. 1997). Moreover, the Defendant contends that the Plaintiff signed his mortgage contract prior to the Defendant posting the Fee Schedule on its website, and accordingly, such statements could not have been "material" to any decision made by the Plaintiff to enter into the contract. In addition, the Defendant reasons that fees on its website cannot constitute a "deception" or "misrepresentation" as to the Plaintiff because the language of his mortgage contract controlled when and how fees could be charged. The Court agrees. To the extent the Plaintiff's GBL § 349 claim is based upon the fees posted on BAC's website, it has not sufficiently

alleged that such statements were a material deception or misrepresentation as to the Plaintiff.

In addition to the Defendant's website, the Plaintiff appears to largely base his Section 349 claim on the allegation that BAC's default related servicing fees are excessive, unreasonable and/or unlawful "following the entry of the Consent Judgment and Order in June 2010." (Compl. at ¶ 28). In its opposition to the Defendant's motion, the Plaintiff contends that the FTC has already found the Defendants' practices to be in violation of certain laws, and therefore that "collecting fees in violation of state and federal laws may satisfy the 'misleading' element of § 349." (Pl. Opp. at 20) (quoting Cohen v. J.P. Morgan Chase & Co., 608 F. Supp. 2d 330, 350 (E.D.N.Y. 2009).

However, at this stage in the litigation the Court cannot conclude that the Defendant's actions in charging certain default related servicing fees were in violation of any state and federal laws. Even the Consent Order and Judgment, upon which the Plaintiff relies, which was entered into by stipulation, does not make such a finding because it is, as the Defendant asserts, "a settlement of disputed claims without any finding or stipulation of wrongdoing." (Def. Reply at 9) (See Pl. Ex. B. at ¶ 4) ("Defendants have not admitted any of the allegations of wrongdoing set forth in the Complaint, and entry of this Order is not an admission of any such allegations of wrongdoing or violation of law."). Thus, the string of cases cited by the Plaintiff in its memorandum to support the contention that courts in New York routinely find that acts which violate another law state a claim for deceptive practices under GBL § 349, are all crucially distinguishable. In addition,

the Plaintiff cannot rely on past conduct allegedly in violation of the FTC Act that was addressed by the FTC Complaint and subsequent Consent Order and Judgment to now assert that the Defendant's recent conduct also is necessarily in violation of that Act or other laws.

Finally, as for whether the charged fees are deceptive and misleading because they are in violation of the Plaintiff's mortgage contract with the Defendant, this allegation is similarly unavailing. As stated above in the context of the breach of the original mortgage contract claim, the Plaintiff's actual mortgage contract contained no express limitation on the appropriate amount of default related servicing fees. In fact, the Plaintiff's mortgage contract did not explicitly put any fiscal limits on the amount of fees and further stated that "[w]ith regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee."

Therefore, because the Plaintiff has not sufficiently alleged any factual allegations supporting that the Defendant's deceptive acts were misleading in a material way, the Plaintiff's GBL § 349 claim is dismissed. See Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (holding that the plaintiff failed to state a claim under GBL § 349 by failing not only to identify the deceptive acts, but also why the acts were deceptive); Benjaminov v. Republic Ins. Group, 241 A.D.2d 473, 474, 660 N.Y. S.2d 148, 149 (2d Dep't 1997) ("Plaintiff may not maintain a cause of action under General Business Law § 349 where . . . she has failed to identify any 'material' 'deceptive acts' engaged in by the defendant.").

The Plaintiff has requested that if the Court grants any portion of the Defendant's Motion to Dismiss, that the Court grant leave to replead those causes of action. The Court finds that only the deficiencies in the Plaintiff's GBL § 349 claim may be cured by an amended pleading. Accordingly, this claim is dismissed without prejudice, and the Plaintiff is granted leave to amend its complaint only as to this cause of action to state a valid GBL § 349 claim within thirty days of the date of this opinion.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss the Plaintiff's claims for breach of the loan modification contract and promissory estoppel is denied; **and it is further**

**ORDERED** that the Defendant's Motion to Dismiss the Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, breach of the original mortgage contract and for violations of GBL § 349 is granted; **and it is further**

**ORDERED** that the Plaintiff is granted leave to replead in accordance with the terms of this Order, as to the GBL § 349 claim only; **and it is further**

**ORDERED** that any amended complaint must be served and filed on or before thirty days from the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
January 14, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge